UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:                                                                    Case No.: 17-10782-7

NELSON T. RODRIGUEZ,

        Debtor.

---

BELINDA GEORGESON,

        Plaintiff,

v.                                                                         Adversary No.: 17-49

NELSON T. RODRIGUEZ,

        Defendant.

---

## **MEMORANDUM DECISION**

Defendant Nelson Rodriguez ("Defendant") filed his chapter 7 petition on March 13, 2017. Belinda Georgeson ("Plaintiff") filed this adversary proceeding on June 9, 2017. Plaintiff seeks to have a debt declared nondischargeable pursuant to section 523(a)(6) for alleged willful and malicious conduct that gave rise to that debt. Defendant is pro se in this matter.

### **FACTS**

Plaintiff and Defendant began living together sometime in 2012 and have a daughter together. Plaintiff says that in June of 2015, Defendant became physically abusive with her. After the incident, Plaintiff and her daughter quickly moved out of the shared residence, taking essential items but leaving many belongings. The items left behind included a hutch, a bike, and several

sealed boxes. Defendant was sent to jail as a result of the incident and was released four days later.

A few weeks later on July 2, 2015, Plaintiff attempted to retrieve the belongings she left in the home. She arrived at Defendant's house with the police and a U-Haul truck, but she did not contact him in advance. Instead, she texted him as she sat around the corner to request access to the home. Defendant refused to let her into the home at that time. Her text was received as he was arriving home from work. He had plans with friends that evening and access with virtually no notice was inconvenient timing for him.

Sometime in late June or early July, Plaintiff obtained a restraining order against Defendant. She was aware she could request the police to accompany her on any trip to the home.

Plaintiff says she tried to retrieve her things again on August 9, 2015, with a sheriff. It is not clear precisely what happened on August 9. The sheriff arrived and spoke with Defendant, who gave him a tour of the home. Many items of Plaintiff's property were left on a porch. For whatever reason, Plaintiff did not get her belongings on that date.

By late August 2015, Defendant had disposed of Plaintiff's property by taking it to the city dump. He kept his daughter's things because he believed at the time that his daughter would eventually return to stay with him.

Plaintiff brought suit in state court to recover damages resulting from the disposal of her things. The Dane County Circuit Court issued a judgment in the amount of $7,800 in favor of Plaintiff.

**DISCUSSION**

Section 523(a)(6) provides "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt— . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity." The creditor must prove, by a preponderance of the evidence under section 523(a)(6), that the debtor's conduct was both willful and malicious. *Grogan v. Garner*, 498 U.S. 279 (1991). A debtor's conduct is willful if it is intentional or deliberate. *See Shteysel v. Shteysel (In re Shteysel)*, 221 B.R. 486, 489 (Bankr. E.D. Wis. 1998). Conduct is malicious if it is "in conscious disregard of one's duties or without just cause or excuse." *Id.*

In determining whether an actor behaved maliciously, courts will take into account the totality of the circumstances. *Vyshedsky v. Soliman (In re Soliman)*, 539 B.R. 692, 699 (Bankr. S.D.N.Y. 2015). "Malice is implied when 'anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another.'" *Id.* (quoting *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 167 B.R. 29, 33 (Bankr. S.D.N.Y. 1994), *aff'd*, 94 F.3d 84 (2d Cir. 1996)).

Defendant intentionally threw out Plaintiff's belongings. He knew the property belonged to Plaintiff and he personally arranged to take them to the city dump.

Defendant argues his conduct does not meet the definition for maliciousness because he believed Plaintiff no longer wanted the items, as

3

evidenced by her failure to pick them up. Plaintiff had keys to the home and could have picked up the property at any time, including when he was at work or in jail. She knew his work schedule. Plaintiff expressed an interest in the items on July 2, a number of weeks after she had moved out. It appears her interest was sincere—she went to the trouble of renting a truck, obtaining a police escort, and driving over to Defendant's residence. Still, even with all that preparation, she didn't bother to tell him about her plan to pick up the boxes until the moment she arrived at the home. Unwilling and unable to accommodate her on such short notice, he reasonably did not allow Plaintiff into the home on that date.

Plaintiff then waited more than a month before seeking to retrieve her things on August 9, 2015. The officer who responded with her contacted Defendant. He apparently checked the home to see if her belongings were still there. No other evidence about this contact was presented.

When asked why she waited so long to get the items, she said she was still trying to figure out where to put them once they were taken from the house. Portions of her belongings had been on a porch. She didn't retrieve those. No further explanation of what happened on that date was provided by Plaintiff. Suffice it to say she did not get her things back.

In late August, Defendant threw out the boxes and other items. He knew the property belonged to Plaintiff but did not know the contents of the boxes. While Plaintiff did nothing to affirmatively give Defendant the impression that

she no longer wanted the items, neither did she take action, other than the two visits listed, to affirmatively confirm she wanted the property.

The boxes were inconvenient to Defendant because they took up so much space in his home. He had to "step over them" and he eventually set them out on the porch to get them out of his way. While Defendant may ultimately have been justified in throwing out the boxes, his actions also appear to have been motivated at least in some small part by anger.

As other courts have noted, for purposes of section 523(a)(6), "it is extremely difficult to probe into the inner processes of a party's mind in order to establish such party's intention." *In re Shteysel*, 221 B.R. at 490. Though Defendant obviously had ill feelings toward Plaintiff, it is also reasonable to believe he wanted to clear space in his home.

Plaintiff relies heavily on *In re Shteysel,* in which the Eastern District of Wisconsin addressed an analogous issue. In that case, the debtor's wife filed for divorce. Shortly thereafter, he wrote checks to his son. The divorce court ordered the return of half the money the debtor had given away under the theory that he had intentionally written the checks to avoid sharing marital assets. *Id.* at 488. He did not pay the judgment but filed bankruptcy instead. The ex-wife filed a motion under section 523(a)(6) to determine the divorce court's order was nondischargeable. The *Shteysel* court ruled that the debtor had intentionally kept the assets out of his wife's hands and therefore the judgment was nondischargeable under section 523.

5

The *Shteysel* analysis has some applicability here. Defendant knew the items belonged to Plaintiff. He had some idea that she may want them back. He kept the items for more than two months before taking them to the city dump. Disposing of the items certainly kept them out of Plaintiff's hands.

But the facts of *Shteysel* are distinguishable. The debtor in that case quickly shifted assets less than a month after being served with divorce papers. He liquidated his retirement, savings, and investment accounts and transferred the funds to his son in California. The sole purpose of liquidating those accounts was to keep them out of the hands of his ex-wife. The court observed his actions were "part of an orchestrated scheme by him to deprive [his spouse] of any share in these assets." *Id.* at 489. That court also found the debtor was an unreliable witness, offering untrue testimony and evasive answers. Under the circumstances of the case, the court held the debtor's behavior was "blatant and egregious" and thus rose to the level of willful and malicious. *Id.*

In this case, Defendant simply threw away some boxes, an old bike, and furniture that he believed were abandoned and had minimal value. He kept those items for more than two months before disposing of them. Plaintiff made two attempts to pick items up. When portions of the property were left on the porch, she did not take them. Neither did she use her keys to retrieve the property while the Defendant was at work. She could have done so accompanied by the police if she was truly fearful or genuinely intent on retrieving the items.

There is no indication that Defendant's actions were part of an "orchestrated scheme" to deprive Plaintiff of her property. To some extent, the items were in his way and were taking up space in his home. The relationship between the parties ended badly. It is reasonable that he would want to clear out her property. Adding to the differences, in *Shteysel* the transfer occurred within a month of service of the divorce papers and had the sole purpose of depriving the wife of the assets. In the instant case, the disposition occurred more than two months after Plaintiff moved. Plaintiff had the ability to retrieve the items when Defendant was at work or in jail. She chose not to do so. The disposition may have been motivated in some part by anger, but he waited more than two months after she left to dispose of the items. It is reasonable that Defendant would have wanted to clear space in his home.

Plaintiff argues by analogy that Defendant had a duty to retain the property under Wis. Stat. § 704.05, which instructs landlords on how to dispose of property left by a tenant. But Plaintiff's reliance on that statute is misguided. In fact, the statute provides support to Defendant's position. First, Defendant and Plaintiff did not have a landlord-tenant relationship. The parties did not have a lease and it does not appear either party paid rent to the other.

Second, even if the statute applied, the Defendant would have been justified in throwing out the property. The statute provides when a tenant leaves the premises:

> "[T]he landlord may presume, in the absence of a written agreement between the landlord and the tenant to the contrary, that the tenant has abandoned the personal property and may . . . dispose of the abandoned personal property."

7

There was no evidence of a written agreement between the parties.

In *In re Everett*, a court addressed a factual scenario that more closely resembles the instant case and Plaintiff's argument. *Henry v. Everett (In re Everett)*, No. 06-11802, Adv. No. 06-5472, 2007 WL 2082122, at *3 (Bankr. D. Kan. July 16, 2007). There, plaintiff brought an action against her former landlord to determine a state court judgment was nondischargeable. Plaintiff had moved out of her apartment and left various items of personal property. Defendant-landlord believed the abandoned items were trash and threw them out. A state court rendered a decision in favor of the plaintiff for violation of Kansas law governing the disposition of abandoned property. Plaintiff-tenant then brought an action against the landlord under section 523(a)(6), claiming the landlord had maliciously thrown out her property. The landlord testified she thought the items were trash.

The *Everett* court denied plaintiff's claim and held that "[a]bsent some extrinsic evidence of defendant's intent to injure plaintiff's property interests, plaintiff has not proven her § 523(a)(6) claim." *Id*. On the one hand, *Everett* is distinguishable because the plaintiff there had not expressed any interest in the property. The Plaintiff here expressed some interest, albeit half-hearted at best. The first was timed at the end of Defendant's workday and the beginning of a holiday weekend. More than a month passed before another unannounced visit was made. There was no explanation provided for the failure to pick up items then or at any other time that might have been possible in Defendant's

8

absence. Defendant was credible in his claim he believed Plaintiff abandoned the property. Plaintiff has failed to rebut Defendant's excuse or otherwise show his actions were motivated entirely—or even mostly—out of maliciousness.

Ultimately, it was Plaintiff's burden at trial to produce some extrinsic evidence that Defendant acted willfully and maliciously. It is both reasonable and predictable that Defendant would eventually throw out abandoned boxes and furniture that belonged to a person who no longer lived in his house. There is nothing in the record that undercuts his defense that he legitimately believed the items were abandoned.

Plaintiff has not articulated any other theory under which Defendant would have had a duty to keep the property. Plaintiff has also failed to show that Defendant acted maliciously.

## CONCLUSION

The Court denies Plaintiff's claim and rules the state court judgment is dischargeable.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order and judgment consistent with this decision will be entered.

Dated: January 31, 2018

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge